UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FRANCISCO CORDOVA,

    Plaintiff,

v.                                                                                                                Civ. No. 16-918 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse or Remand the Administrative Decision" [ECF No. 18] and "Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand the Administrative Decision" (collectively, "Motion"),[1] filed on February 22, 2017. ECF No. 19. The Commissioner responded on April 28, 2017. ECF No. 21. Plaintiff replied on May 10, 2017. ECF No. 22. Having meticulously reviewed the briefing and the entire record, the Court finds that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**. Therefore, and for the further reasons articulated below, the Court will **GRANT** Plaintiff's Motion.

## I.    BACKGROUND

Plaintiff was born on September 16, 1961, in Santa Fe, New Mexico. Administrative R. ("AR") 233-34. He attended school until the tenth grade but did not receive a diploma. AR 271. Plaintiff later obtained a General Educational Development ("GED") certificate while he was

---

[1] Here, the Court refers to Plaintiff's Motion to Remand and Memorandum Brief collectively as a Motion, but subsequent citations to Plaintiff's Motion shall refer to the text of Plaintiff's Memorandum Brief.

incarcerated. AR 85. Plaintiff's work history included employment as a prep cook, handyman, and auto mechanic. AR 85.

Plaintiff filed an application for Supplemental Security Income ("SSI") on November 27, 2012, alleging disability beginning on July 30, 2012, due to paranoid schizophrenia, bipolar disorder, anxiety disorder, and physical limitations stemming from back and right shoulder injuries. AR 238. The Social Security Administration ("SSA") denied Plaintiff's application initially on March 19, 2013 [AR 138], and upon reconsideration on July 19, 2013. AR 153. At his request, Plaintiff received a *de novo* hearing before ALJ John W. Rolfe on October 2, 2014, at which Plaintiff, his attorney, and a vocational expert ("VE") appeared. AR 81-119. On January 16, 2015, the ALJ issued his decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 60-73. Plaintiff appealed to the SSA Appeals Council ("Appeals Council"), but it declined review on June 27, 2016. AR 1-4. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2016).

Plaintiff timely filed his appeal in this Court on August 12, 2016. ECF No. 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff advances five grounds for relief. First, he argues that the ALJ erroneously evaluated the medical evidence and misapplied relevant governing regulations. Pl.'s Mot. 6-9, ECF No. 19. Second, he contends the ALJ improperly assessed his limitations under the "paragraph B" criteria of the mental Listings of Impairments ("Listings"). *Id.* at 9-14. Third, Plaintiff alleges that the ALJ impermissibly failed to incorporate certain limitations into his residual functional capacity ("RFC"). *Id.* at 14-19. Fourth, Plaintiff claims that the ALJ's

adverse credibility finding is fraught with legal error. *Id.* at 19-21. Lastly, he challenges the ALJ's step five findings. *Id.* at 20-24.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[2] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on

the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION

The ALJ issued his decision on January 16, 2015. AR 57. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the protective filing date[3] of November 27, 2012. AR 62. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) obesity; (2) diabetes mellitus; (3) status post right shoulder injury; (4) schizophrenia/psychotic disorder not otherwise specified (in remission); and (5) anxiety disorder (not otherwise specified). AR 62.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 63-65. The ALJ began with Plaintiff's physical impairments, and found that Plaintiff did not meet or medical equal Listing 1.02 for major dysfunction of a joint. To meet that Listing, Plaintiff would have had to establish that his back pain or shoulder pain resulted in "an inability to ambulate effectively" or the "inability to perform fine and gross

---

[3] ALJs ordinarily interpret 20 C.F.R. § 416.971 (2017) to apply from the alleged disability onset date, but here, the ALJ noted that Plaintiff "worked after the application date but this work activity did not rise to the level of substantial gainful activity." AR 62.

5

movements effectively." AR 63. The ALJ addressed Plaintiff's back pain by noting that in his "Function Report – Adult," Plaintiff self-reported that "he does not require assistive devices to ambulate." AR 63 (citing AR 267). He further observed that during a consultative examination, Plaintiff "was able to get on and off the exam table without difficulty." AR 63 (citing AR 564). As to Plaintiff's shoulder injury, the ALJ recounted that Plaintiff does not "allege that he is unable to perform fine and gross movements effectively." AR 63. Additionally, the ALJ took account of Plaintiff's statement "that he has spent time working on cars, which requires fine and gross movement of the upper extremity." AR 63. Thus, because Plaintiff could ambulate independently and effectively perform relevant movements with his affected upper extremity, the ALJ found he did not meet or medically equal Listing 1.02.

Additionally, the ALJ considered Plaintiff's diabetes mellitus under Listing 9.00, which directed the ALJ to assess Plaintiff's condition under applicable listings for other body systems.[4] AR 63. The ALJ framed the discussion by stating, "[d]iabetes is not a listed impairment,

---

[4] Diabetes mellitus is an endocrine disorder. The SSA evaluates impairments that result from endocrine disorders under the listings for other body systems. For diabetes mellitus, regulations specifically provide:

> Diabetes mellitus and other pancreatic gland disorders disrupt the production of several hormones, including insulin, that regulate metabolism and digestion. Insulin is essential to the absorption of glucose from the bloodstream into body cells for conversion into cellular energy. The most common pancreatic gland disorder is diabetes mellitus (DM). There are two major types of DM: type 1 and type 2. Both type 1 and type 2 DM are chronic disorders that can have serious disabling complications that meet the duration requirement. Type 1 DM—previously known as "juvenile diabetes" or "insulin-dependent diabetes mellitus" (IDDM)—is an absolute deficiency of insulin production that commonly begins in childhood and continues throughout adulthood. Treatment of type 1 DM always requires lifelong daily insulin. With type 2 DM—previously known as "adult-onset diabetes mellitus" or "non-insulin-dependent diabetes mellitus" (NIDDM)—the body's cells resist the effects of insulin, impairing glucose absorption and metabolism. Treatment of type 2 DM generally requires lifestyle changes, such as increased exercise and dietary modification, and sometimes insulin in addition to other medications. While both type 1 and type 2 DM are usually controlled, some persons do not achieve good control for a variety of reasons including, but not limited to, hypoglycemia unawareness, other disorders that can affect blood glucose levels, inability to manage DM due to a mental disorder, or inadequate treatment.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 9.00(B)(5) (2017).

however, its effects on other body systems, if sufficiently severe, may meet [L]istings for those body systems." AR 63. Upon review, the ALJ did not find the required severity of symptoms in any of Plaintiff's other body systems, and therefore, he found that Plaintiff's diabetes mellitus did not meet or medically equal Listing 9.00. AR 63.

The ALJ then turned to Plaintiff's obesity, which he pointed out "is not a listed impairment," but "may be found to equal a [L]isting, or alternatively, may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a [L]isting." AR 63 (internal citation and quotation marks omitted). He noted that "the record does contain references to [Plaintiff's] obesity," but also found that the record indicated Plaintiff "has been able to exercise frequently" and engage in activities "like walking around town with his wife." AR 63. As a consequence, the ALJ found that the effects of Plaintiff's obesity were not sufficiently severe to equal a Listing, nor did they increase the severity of any other impairment sufficiently to do the same. AR 63.

Next, the ALJ turned to Plaintiff's mental impairments, which the ALJ found did not meet or medically equal the criteria of Listing Sections 12.03 (schizophrenia spectrum and other psychotic disorders) or 12.06 (anxiety-related disorders). AR 63-65. The ALJ found that the paragraph B criteria of Listings 12.03 and 12.06[5] were not met "[b]ecause [Plaintiff's] mental

---

[5] Paragraph B of Listings 12.03 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
     1. Marked restriction of activities of daily living; or
     2. Marked difficulties in maintaining social functioning; or
     3. Marked difficulties in maintaining concentration, persistence, or pace; or
     4. Repeated episodes of decompensation, each of extended duration.

*Id.* §§ 12.03(B), 12.06(B) (2014). On March 27, 2017, the SSA significantly altered the language of these Listings.

7

impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 65.

He then explained his reasoning regarding paragraph B's four subparts, beginning with activities of daily living. There, the ALJ found Plaintiff to have only a mild restriction. He stated at the outset that "Ms. Pollem and Ms. Heising[6] opined that [Plaintiff] has [a] 'marked' restriction in activities of daily living," but noted that he accorded those opinions little weight. AR 64. In fact, the ALJ detailed that on July 21, 2014, Ms. Heising "assigned [Plaintiff's] activities of daily living a score of five, which is the highest score possible." AR 64 (citing AR 706). Notably, she also described Plaintiff's activities of daily living as "excellent," and concluded that "no improvement [was] needed." AR 64 (internal citation and quotation marks omitted). The ALJ found these conclusions to comport with Plaintiff's own statements, including reports "that he had been working on cars on and off" and "walking around town with his wife and picking up cans to turn in for recycling." AR 64.

As to social functioning, the ALJ found Plaintiff to suffer moderate difficulties. By Plaintiff's account, "he did not spend time with others," and "did not like to deal with people." AR 64 (citing AR 265-66). The ALJ noted evidence to support Plaintiff's reporting, including Plaintiff's testimony concerning his anxiety and prior treatment records demonstrating that social interactions had both increased Plaintiff's anxiety and caused relapses into cocaine use. AR 64 (citing AR 723). But, the ALJ also found evidence that Plaintiff's social functioning is only moderately limited, including the facts that in 2013 and 2014: (1) he was reaching out to his church community, (2) spending time with his wife and niece; (3) spending time with his son; and (4) he attended a wedding, which "involves social interaction with multiple people." AR 64

---

[6] As will be discussed below, Ms. Asha Pollem works as a psychiatric-mental health nurse practitioner and Ms. Amara Heising serves as a Licensed Alcohol and Drug Abuse Counselor at Albuquerque Healthcare for the Homeless.

(citations omitted). Treatment records produced in June and July of 2014 further bolstered a moderate finding, as providers at Albuquerque Healthcare for the Homeless had described Plaintiff as having "a lot of positive relationships" and rated his social functioning as "excellent." AR 64-65 (citing AR 706, 709) (internal quotation marks omitted).

Next, the ALJ turned to Plaintiff's concentration, persistence, and pace, and again found Plaintiff to have moderate difficulties. The ALJ first looked to the findings of consultative psychological examiner Amy S. Bernardi, Psy.D., who opined that Plaintiff's mental impairments "would likely impact his ability to follow complex instructions, be a dependable employee, or tolerate changes in the work environment." AR 65 (citing AR 570). He weighed this opinion against that of consultative examiner Raul Young-Rodriguez, M.D., who noted that Plaintiff "followed simple directions well." AR 65 (citing AR 565). The ALJ found the two opinions, when considered together, to direct a finding of moderate difficulties. AR 65.

The ALJ concluded his paragraph B discussion by finding that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." AR 65. That lack of decompensation also led the ALJ to find that "the evidence fails to establish the presence of the 'paragraph C' criteria," [7] thereby bringing his discussion of the Listings to a close. AR 65.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 65-71. "After careful consideration of the

---

[7] Paragraph C of Listings 12.03 and 12.06 (which was also identical at the time of the ALJ's decision in both) describes mental disorders that are serious and persistent. To qualify under this paragraph in either Listing, a claimant must have a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both:
    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.03(C), 12.06(C).

9

entire record," the ALJ determined that "[Plaintiff] has the residual functional capacity to perform medium work" with the following limitations:

> occasional overhead reaching with the dominant right upper extremity. He may frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, may occasionally climb ladders and scaffolds, and may never climb ropes. [Plaintiff] is capable of learning, remembering, and performing simple and detailed work tasks up through and including jobs at the SVP 4 level, which are performed in a routine, predictable, and low-stress work environment, defined as one in which there is a regular pace, few workplace changes, and no over-the-shoulder supervision. [Plaintiff] can maintain concentration, persistence, and pace for two to three hours at a time with regular breaks. [Plaintiff] may have occasional and superficial contact with supervisors and coworkers, and may have minimal to no contact with the public. [Plaintiff] will perform optimally in work tasks that do not require teamwork, and that allow him to work independently of others.

AR 65-66.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ rendered an adverse credibility finding against Plaintiff, which he memorialized by finding that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects" of his symptoms were "not entirely credible." AR 67. To craft this finding, the ALJ considered Plaintiff's allegations concerning his mental impairments as well as those related to his physical limitations.

As to his mental limitations, the ALJ weighed Plaintiff's allegation that "he is unable to work due to physical and mental impairments," and considered Plaintiff's claim of "significant social anxiety . . . when he has to interact with other people." AR 66 (citations omitted). The ALJ similarly considered Plaintiff's assertions concerning his diminished ability to concentrate, including his self-reporting that: (1) his impairments interfere with his ability to complete tasks, concentrate, follow instructions, and get along with others; (2) he does not handle stress or changes in routine well; and (3) hears voices and sees shadows. AR 66 (citing 264-67). Then,

10

he compared these allegations to the medical record and found the claims wanting. First, he questioned Plaintiff's schizophrenia diagnosis, noting that while Plaintiff claimed to have been diagnosed with the same by Dr. Tim McMurray, M.D., the relevant form did "not contain detailed comments regarding [Plaintiff's] impairments or limitations," and further, the form was only reviewed – rather than signed – by Dr. McMurray. AR 67 (citing AR 539-42). The ALJ also observed that in both October and November 2013, Plaintiff had reported to treating officials that he rarely if ever heard voices, and that the other schizophrenic symptoms he claimed were abating. AR 67 (citing AR 659, 661). Lastly, he noted that at Albuquerque Healthcare for the Homeless, where he was "most frequently" observed, the health care providers found him to be "psychiatrically stable," with "a lot of positive relationships" and "exhibiting no risks." AR 68 (citations omitted). These same providers also opined that Plaintiff needed no improvement in his activities of daily living, and that he had demonstrated excellent progress from 2013 to 2014. AR 68 (citations omitted). These records led the ALJ to conclude that Plaintiff's symptoms of mental impairment "are not as severe or frequent as alleged." AR 67.

The ALJ also assessed Plaintiff's reporting of his various physical impediments. Here, the ALJ considered Plaintiff's claims that "he can no longer swim because of his impairments," that his "back impairment makes it difficult to walk," and that he "cannot walk long before needing to stop and rest." AR 66 (citing AR 265-66). He further evaluated Plaintiff's specific allegations that "he can stand for only 15 to 20 minutes before needing to change positions," and that he can only lift five pounds, which at his administrative hearing, Plaintiff clarified to mean he could only lift five pounds with his right arm. AR 67 (citation omitted). The ALJ then turned to the record, where consultative examiner Dr. Raul Young-Rodriguez, M.D., noted that "the

clinical medical evidence supported only mild-to-moderate limitation of activity involving the right shoulder and lumbar spine." AR 68 (citing AR 565). The ALJ emphasized that at that consultative examination, Plaintiff "was able to get on and off the exam table, up and out of the chair, and dress and undress himself without difficulty, except that [Plaintiff] seemed to have some difficulty with moving his right arm overhead." AR 68 (citing AR 564). The ALJ also observed that Plaintiff reported walking around town with his wife to collect boxes and cans, which he believed to indicate that Plaintiff "is able to lift and carry more than five pounds" as he alleged. AR 69. Lastly, he highlighted numerous mentions in the record of Plaintiff working on cars. AR 68 (citations omitted). Taken together, these facts led the ALJ to find Plaintiff's account of his physical symptoms to "be only partially credible." AR 68.

Following his credibility determination, the ALJ began to evaluate each medical opinion in turn. Specifically, the ALJ weighed four separate medical opinions - one from a consultative examining physician, one from a consultative examining psychologist, and two from non-medically acceptable sources at Albuquerque Healthcare for the Homeless.

*Dr. Raul Young-Rodriguez, M.D.*

The ALJ accorded great weight to the opinion of consultative examiner Dr. Raul Young-Rodriguez, M.D. Dr. Rodriguez examined Plaintiff on March 7, 2013, and chronicled Plaintiff's claims of severe physical impairments, which included the inability to: (1) lift more than five pounds; (2) stand for more than two hours during an eight-hour workday, (3) walk more than three blocks without stopping and resting; and (4) sit for more than one hour. AR 69 (citing AR 564). Dr. Rodriguez reviewed the medical evidence in Plaintiff's file, and opined that the evidence supported only mild or moderate limitations of activity involving Plaintiff's spine and right shoulder. AR 69 (citing AR 565). He observed that Plaintiff "was able to get on and off

the exam table, up and out of a chair, and dress and undress himself without difficulty," but that he "seemed to have some difficulty with moving his right arm overhead." AR 69 (citing AR 564). The ALJ reasoned that Dr. Young-Rodriguez's opinion drew support from the record, including Plaintiff's "reports that he remained active daily by engaging in activities like walking around town with his wife and picking up boxes and cans to turn in for recycling." AR 69 (citing AR 701). Additionally, the ALJ found the opinion to "supported by reports in the record of the claimant exercising and working on cars." AR 69 (citing AR 655-56).

*Amy S. Bernardi, Psy.D.*

The ALJ assigned "little weight" to the opinion of consultative examining psychologist Amy S. Bernardi, Psy.D., who examined Plaintiff on February March 7, 2013. AR 69. Dr. DeBernardi opined that Plaintiff was most likely unable to work at the time and explained that Plaintiff's symptoms of mental impairments "would likely impact his ability to follow complex directions, be a dependable employee, or tolerate changes in the work environment." AR 70 (citing AR 570). The ALJ particularly noted that Dr. Bernardi assigned Plaintiff a Global Assessment of Functioning ("GAF")[8] score of 48, which indicates either serious symptoms (including suicidal ideation, severe obsessional rituals, or frequent shoplifting) or the presence of a serious impairment in social, occupation, or school functioning. *See* AR 70, 570; *infra* note 8. The ALJ discounted this score, reasoning that "[a] GAF score is a mere snapshot of [Plaintiff's] ability to function at the particular time of the assessment," and further explained that the GAF assessment "is not dispositive," as it includes "factors such as legal, housing, or financial problems which are not properly part of the disability analysis under the Social Security Act."

---

[8] The Global Assessment of Functioning test is "widely used for scoring the severity of illness in psychiatry." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2880316/#B14 (last visited November 5, 2017). A GAF score of 48 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *See* https://msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited November 5, 2017).

13

AR 67. He also cast a critical eye on the foundation of Dr. Bernardi's findings by stating that she "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported." AR 70. This conflicted with what the ALJ saw as "good reasons for questioning the reliability of [Plaintiff's] subjective complaints." AR 70. The ALJ also found Dr. Bernardi's opinion to be inconsistent both with Plaintiff's self-reported activities of daily living and the GAF scores assigned by Plaintiff's primary providers at Albuquerque Healthcare for the Homeless, which had never been below 55. AR 67, 70. As a consequence, the ALJ discounted Dr. Bernardi's opinion.

*Asha Pollem, PMHNP*

The ALJ also accorded little weight to the opinions of Asha Pollem, a psychiatric-mental health nurse practitioner ("PMHNP") who treated Plaintiff on multiple occasions from 2012 to 2014. AR 70. At the outset, the ALJ observed that Ms. Pollem did not qualify as an acceptable medical source, and therefore, he stated that he would consider her opinion as that of an "other source" under relevant regulations. AR 70; *see* 20 C.F.R. § 416.913 (2014)[9]; Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)[10] (defining acceptable and

---

[9] On March 27, 2017, the SSA significantly altered the language of 20 C.F.R. § 416.913. At the time of the ALJ's deliberations and ruling, the regulation provided that the SSA "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 416.913(d) (2014). Other sources, at the time, included nurse practitioners. *See id.*

[10] SSR 06-03p defines medical sources who are not "acceptable medical sources" to include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. *See* 2006 WL 2329939, at *2. The Ruling also provides:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Id.*

non-acceptable medical sources). The ALJ then turned to Ms. Pollem's treatment records and noted that on December 12, 2012, she completed a "questionnaire," wherein she "opined . . . that [Plaintiff] had moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace." AR 70 (citing AR 637). In the same questionnaire, Ms. Pollem also stated that Plaintiff "had experienced three episodes of decompensation, each of extended duration." AR 70 (citing AR 637). The ALJ then discussed a subsequent questionnaire completed by Ms. Pollem on February 17, 2014, in which she "opined that [Plaintiff] had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace." AR 70 (citing AR 695). At that time, Ms. Pollem also claimed Plaintiff "had experienced four or more episodes of decompensation, each of extended duration." AR 70 (citing AR 695).

The ALJ compared Ms. Pollem's opinions against her treatment records and found them "to be inconsistent," which rendered the opinions "less persuasive." AR 70. He cited to multiple instances in the record where Ms. Pollem observed that Plaintiff: (1) did "get out of the house and interact with others with some regularity (December 9, 2013);" (2) was "overall functioning well" (June 30, 2014); (3) had "a lot of positive relationships" (same date); and (4) was stable psychiatrically and exhibiting no risks. (same date). AR 70 (citing AR 653, 709). In the ALJ's opinion, these statements did "not support Ms. Pollem's opinion statement that claimant had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace." AR 70. (citing AR 695). As a result, the ALJ accorded Ms. Pollem's opinions little weight.

*Amara Heising, LADAC*

Ms. Amara Heising completed a questionnaire concerning Plaintiff's mental impairments on October 2, 2014. AR 71 (citing AR 734-40). Therein, she opined that Plaintiff "had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace." AR 71 (citing AR 738). She additionally concluded that Plaintiff had suffered four or more periods of decompensation, each of extended duration. AR 71 (citing AR 738). The ALJ noted, however, as with Ms. Pollem's opinion, that Ms. Heising's opinion was "inconsistent with other reports made by her," and therefore "rendered less persuasive." AR 71. He explained that "[c]ontrary to Ms. Heising's opinion statement, on May 20, 2014, Ms. Heising reported that [Plaintiff's] depression, anxiety, and paranoia had significantly improved, and that [Plaintiff] believed in his ability to care for himself." AR 71 (citing AR 711). Additionally, he highlighted Ms. Heising's notes of July 31, 2014, wherein she assigned Plaintiff the highest possible scores in activities of daily living and social function, while describing Plaintiff's functioning in these areas as "excellent" and not requiring improvement. AR 71 (citing AR 706). These notes echoed Ms. Heising's statement that Plaintiff had made "excellent progress over the last year." AR 71 (quoting AR 703). Lastly, the ALJ considered that Ms. Heising had assigned Plaintiff a GAF score of 55, which although not dispositive, was also "not consistent with the limitations" contained in her opinion. In the aggregate, these inconsistencies led the ALJ to discount Ms. Heising's opinion and assign it little weight. AR 71.

In the second phase of step four, the ALJ identified past relevant work as a cook's helper and as an auto mechanic's helper. AR 71. Then, at the third and final phase of step four, the

ALJ found that Plaintiff could not return to any of these three instances of past relevant work, as their demands exceeded the RFC he had prescribed. AR 71.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 72-73. These jobs, as described by the VE, Nicole King, included assembler, Dictionary of Occupational Titles ("DOT")[11] #706.687-010, electronics assembler, DOT #706.687-010, and garment sorter, DOT #706.687-010. AR 72. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 73. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied his claim. AR 73.

After the ALJ denied the claims, Plaintiff submitted additional evidence to the Appeals Council. *See* AR 2, 5. The Appeals Council accepted certain evidence, which pre-dated the ALJ's decision, and made it part of the record. AR 5, 357-75, 741-51. Nevertheless, the Appeals Council found that it "[did] not provide a basis for changing the [ALJ]'s decision." AR 2. The evidence that post-dated the ALJ's decision, however, was *not* made part of the record. *See* AR 5, 7-52. The Appeals Council found that the "new information [was] about a later time," and therefore, did "not affect the [ALJ's decision]." AR 2. Remaining unpersuaded, the Appeals Council denied Plaintiff's request for review on June 27, 2016. AR 1-4.

---

[11] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2017). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2017).

## V. ANALYSIS

The Court's review of this case has been made manifestly more difficult by the parties' failure to directly address a critical issue: whether this Court may consider *at all* the opinions of clinical nurse specialist ("CNS") Cristina Carlson. Nurse Carlson completed a questionnaire on Plaintiff's mental impairments on December 2, 2015, almost eleven months *after* the ALJ's decision. *See generally* Pl.'s Mot. 6-23. Virtually throughout his Motion, Plaintiff urges the Court to consider the merits of Nurse Carlson's opinions in furtherance of his position that the ALJ erred. Indeed, Plaintiff cites to this new evidence no less than twelve (12) times in his Motion. *See id.* at 2, 8, 9, 11, 13, 16, 22. But Plaintiff does so *despite* the Appeals Council having refused to make Ms. Carlson's opinion part of the record, *see* AR 5, and despite the Appeals Council having found that Ms. Carlson's opinion was "about a later time." AR 2. Although Plaintiff has enumerated five separate points of alleged error in his Motion, he *at no point* contends explicitly that the Appeals Council erred in refusing to accept and consider Nurse Carlson's opinions. His brief is silent on that point. Nevertheless, Plaintiff overtly and repeatedly invites this Court to consider Nurse Carlson's opinions as part of its substantial evidence and legal error review in four of his five claims. *See generally* Pl.'s Mot. 6-23.

The Court fully expected the Commissioner to object to the Court considering Nurse Carlson's opinions *at all*, given that Plaintiff did not allege as a point of error that the Appeals Council improperly refused to accept the opinions as part of the record. But the Commissioner did not object. Instead, the Commissioner did exactly as Plaintiff did – which is to consider Nurse Carlson's opinions just as if they *were* a proper part of the record – by responding to Plaintiff's arguments through citation to Ms. Carlson's opinion. *See* Def.'s Resp. at 6, 13. In

18

electing not to object and instead arguing the merits and weight of Nurse Carlson's opinions, the Commissioner has waived her ability to contest the admissibility of this new evidence.

To repeat, the Commissioner could have objected to the *mere mention* of Ms. Carlson's opinion, as it likely would not otherwise have been properly before this Court because it was not made part of the record. Rather than objecting, however, the Commissioner has joined Plaintiff in debating Nurse Carlson's opinions and advancing them for this Court's review. But the merits of her opinions have never been weighed before and, despite the parties' desire for it to do so, the Court recognizes that it is barred from weighing new evidence in the first instance. *See Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004) (reserving to the agency the authority to weigh new evidence in the first instance). Regulations quite properly reserve that function to the agency. As the Commissioner has now abandoned the Appeals Council's decision that Nurse Carlson's opinions should not be part of the record and argued instead for the consideration (and implicit rejection) of those opinions, the Court concludes that the agency must be afforded the opportunity, on remand, to assign to Nurse Carlson's opinions the appropriate weight and fashion a decision that incorporates the same. Therefore, the Court must reverse and remand the ALJ's decision for further consideration of Ms. Carlson's opinion.[12]

## VI. CONCLUSION

For the reasons articulated above, the instant matter shall be remanded to the Social Security Administration for consideration of the new evidence that both Plaintiff and the Commissioner now deem to be appropriately included in the record.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 18] **IS HEREBY GRANTED.**

---

[12] The Court will not address the other errors alleged by Plaintiff at this time in order to allow the agency the opportunity to review the new evidence the Commissioner has conceded to be properly included in the record.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and that the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*